UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPENCER REISBICK,<br><br>         Plaintiff,<br><br>   -against-<br><br>QTS REALTY TRUST, INC., CHAD WILLIAMS, PHILIP P. TRAHANAS, JOHN BARTER, JOAN DEMPSEY, CATHERINE R. KINNEY, PETER A. MARINO, SCOTT D. MILLER, MAZEN RAWASHDEH, WAYNE REHBERGER, and STEPHEN E. WESTHEAD,<br><br>         Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Spencer Reisbick ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against QTS Realty Trust, Inc. ("QTS" or the "Company") and the members of QTS's board of directors (the "Board" or the "Individual Defendants" and together with QTS, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of QTS by affiliates of Blackstone Infrastructure Partners L.P. and BRIET Operating Partnership L.P., affiliates of The Blackstone Group Inc. ("Blackstone") (the "Proposed Merger").

2. On June 7, 2021, the parties entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which each QTS shareholder will be entitled to receive $78.00

1

in cash in exchange for each share of common stock they own (the "Merger Consideration"). Upon consummation of the Proposed Merger, QTS will merge with and into Volt Lower Holdings LLC ("Merger Sub I") with Merger Sub I surviving the merger and whereby Volt Acquisition LP ("Merger Sub II") will merge with and into QualityTech, LP (the "Partnership") with the Partnership surviving. After both transactions, QTS will be owned by Blackstone Infrastructure Partners L.P. and BRIET Operating Partnership L.P.

3. On July 8, 2021, in order to solicit QTS shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy").

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for QTS, (ii) the valuation analyses performed by QTS's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Jefferies LLC ("Jefferies").

5. The special meeting of QTS shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to QTS's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, QTS's common stock trades on the New York Stock Exchange, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10. Plaintiff is, and at all relevant times has been, a shareholder of QTS.

11. Defendant QTS is a Maryland corporation with its principal executive offices located in Overland Park, Kansas. QTS's common stock trades on the New York Stock Exchange

3

under the ticker symbol "QTS".

12. Individual Defendant Chad Williams is, and has been at all relevant times, a director and the Chief Executive Officer and Chairman of the Board of QTS.

13. Individual Defendant Philip P. Trahanas is, and has been at all relevant times, a director of QTS.

14. Individual Defendant John Barter is, and has been at all relevant times, a director of QTS.

15. Individual Defendant Joan Dempsey is, and has been at all relevant times, a director of QTS.

16. Individual Defendant Catherine R. Kinney is, and has been at all relevant times, a director of QTS.

17. Individual Defendant Peter A. Marino is, and has been at all relevant times, a director of QTS.

18. Individual Defendant Scott D. Miller is, and has been at all relevant times, a director of QTS.

19. Individual Defendant Mazen Rawashdeh is, and has been at all relevant times, a director of QTS.

20. Individual Defendant Wayne Rehberger is, and has been at all relevant times, a director of QTS.

21. Individual Defendant Stephen E. Westhead is, and has been at all relevant times, a director of QTS.

22. The Individual Defendants referred to in ¶¶ 12-21 are collectively referred to herein as the "Individual Defendants" and with QTS they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I. **Background and the Proposed Merger**

23. QTS is a leading provider of data center solutions to sophisticated hyperscale technology companies, enterprises and government agencies. Through its technology-enabled platform, delivered across mega scale data center infrastructure, QTS offers a comprehensive portfolio of secure and compliant information technology ("IT") solutions. QTS operates a portfolio of 28 data centers located throughout the United States, Canada and Europe.

24. Blackstone is a global leader in real estate and infrastructure investing. Blackstone's real estate business was founded in 1991 and has approximately $196 billion in investor capital under management. Multiple long-term perpetual capital vehicles managed by Blackstone are participating in the Proposed Merger, including Blackstone Real Estate Income Trust, Inc. ("BREIT") which is a perpetual-life, institutional quality real estate investment platform that brings private real estate to income focused investors with total asset value of approximately $48 billion.

25. On June 7, 2021, QTS issued a press release announcing the Proposed Merger, which states in relevant part:

> **QTS Realty Trust to Be Acquired by Blackstone Funds in $10 Billion Transaction**
>
> QTS Common Stockholders to Receive $78 Per Share in Cash
> Represents a Premium of 21% to QTS' Closing Stock Price of $64.49 on June 4, 2021
>
> **OVERLAND PARK, Kan. and NEW YORK – June 7, 2021 –** QTS Realty Trust (NYSE: QTS) ("QTS" or "the Company") and Blackstone (NYSE: BX), today announced that they have entered into a definitive agreement under which Blackstone Infrastructure Partners, Blackstone Real Estate Income Trust, Inc. and other long-term perpetual capital vehicles managed by Blackstone will acquire all outstanding shares of common stock of QTS Realty Trust for $78.00 per

share in an all-cash transaction valued at approximately $10 billion, including the assumption of debt. The purchase price represents a premium of 21% to QTS' closing share price as of June 4, 2021 and a 24% premium to the volume weighted average share price over the last 90 days. The transaction was unanimously approved by the QTS Board of Directors and is expected to close in the second half of 2021.

Blackstone's interest in acquiring QTS and its commitment to investing in its platform is a testament to the QTS team's success in building a leading data center company. Blackstone's expertise, resources and consistent access to capital will support QTS' growth and help expand the reach of its data center solutions supporting new and existing customers. Upon completion of the transaction, the parties expect that QTS will continue to be led by its senior management team and maintain its corporate headquarters in Overland Park, Kansas.

"We are pleased to enter into this transaction with Blackstone, as it will deliver compelling, immediate and certain value to stockholders while positioning QTS to continue supporting customers' expanding data center infrastructure needs," said Philip Trahanas, Lead Director of the QTS Board of Directors. "The QTS Board regularly reviews the Company's strategy and market opportunities to maximize stockholder value, and we are confident this transaction achieves that objective."

"QTS is powered by its people and continues to set a new standard for service delivery in the data center industry," said Chad Williams, Chairman and CEO of QTS. "We see a significant market opportunity for growth as hyperscale customers and enterprises continue to leverage our world-class infrastructure to support their digital transformation initiatives. We are confident this transaction is the right step to achieve our strategic objectives in our next phase of growth. I want to thank each of our QTS employees for their continued dedication to a culture of service to others, which has positioned QTS to enter into this transformative transaction."

"We are delighted to back QTS and its world-class management team as they continue to scale the company to meet the rising demand for data centers. QTS aligns with one of Blackstone's highest conviction themes – data proliferation – and the required investment makes it well suited as a long-term holding for our perpetual capital vehicles. We are committed to a strong, lasting partnership, leveraging Blackstone's scale, reach, resources and access to capital to drive long-term growth at QTS," said Greg Blank, Senior Managing Director, Blackstone Infrastructure Partners.

"We are focused on investing in assets that are benefitting from strong, secular tailwinds, such as the rapid digitalization of data. QTS is a leading provider of data center solutions with a portfolio of high-quality assets in desirable markets, positioning it well to capitalize on these powerful trends in the data center space. We believe the vast expertise across our business will enable the QTS platform to

succeed over the long-term," said Tyler Henritze, Head of Acquisitions Americas for Blackstone Real Estate.

**Transaction Terms, Timing and Approvals**

The definitive merger agreement includes a 40-day "go-shop" period that will expire on July 17, 2021, subject to extension under certain circumstances, which permits QTS and its representatives to actively solicit and consider alternative acquisition proposals. QTS has the right to terminate the definitive merger agreement with Blackstone to enter into a superior proposal subject to certain terms and conditions of the definitive merger agreement. There can be no assurance that this process will result in a superior proposal, and QTS does not intend to disclose developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

The transaction with Blackstone is expected to close in the second half of 2021, subject to approval by QTS' stockholders and the satisfaction of other customary closing conditions.

Subject to and upon completion of the transaction, QTS' common stock will no longer be listed on the New York Stock Exchange. QTS will be jointly owned by Blackstone Infrastructure Partners and Blackstone Real Estate Income Trust ("BREIT").

**Advisors**

Jefferies LLC and Morgan Stanley & Co. LLC are acting as financial advisors to QTS, and Hogan Lovells US LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP are acting as legal counsel to QTS. Citigroup Global Markets Inc., Barclays, Deutsche Bank Securities Inc., Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are acting as financial advisors to Blackstone, and Simpson Thacher & Bartlett LLP is acting as its legal counsel.

**About QTS**

QTS Realty Trust, Inc. (NYSE: QTS) is a leading provider of data center solutions across a diverse footprint spanning more than 7 million square feet of owned mega scale data center space within North America and Europe. Through its software-defined technology platform, QTS is able to deliver secure, compliant infrastructure solutions, robust connectivity and premium customer service to leading hyperscale technology companies, enterprises, and government entities. Visit QTS at www.qtsdatacenters.com, call toll-free 877.QTS.DATA or follow on Twitter @DataCenters_QTS.

**About Blackstone**

>Blackstone is one of the world's leading investment firms. We seek to create positive economic impact and long-term value for our investors, the companies we invest in, and the communities in which we work. We do this by using extraordinary people and flexible capital to help companies solve problems. Our $649 billion in assets under management include investment vehicles focused on private equity, real estate, public debt and equity, life sciences, growth equity, opportunistic, non-investment grade credit, real assets and secondary funds, all on a global basis. Further information is available at www.blackstone.com. Follow Blackstone on Twitter @Blackstone.

**II.     The Proxy Omits Material Information**

26.     On July 8, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to QTS's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for QTS's shareholders to make an informed decision in connection with the Proposed Merger.

     A.     <u>The Misleadingly Incomplete Financial Projections</u>

27.     The Proxy omits material information regarding the financial projections for QTS and relied upon by Morgan Stanley and Jefferies in their analyses. The Proxy provides values for non-GAAP financial metrics, including Adjusted EBITDA, Unlevered Free Cash Flows, Operating Funds from Operations, and Adjusted Funds from Operations, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures.

28.     The projections served as a primary reason for the Board to approve the Proposed Merger and for Morgan Stanley and Jefferies to find the Merger Consideration "fair" to QTS shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed

Merger: Is the Merger Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger. Thus, the omitted information is plainly material to shareholders and must be disclosed.

29.     With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Morgan Stanley, Jefferies and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of QTS's value and financial picture in the Proxy misleadingly incomplete.

      B.     <u>The Misleadingly Incomplete Summary of Morgan Stanley's and Jefferies' Valuation Analyses</u>

30.     The Proxy describes Morgan Stanley's and Jefferies' fairness opinions and the various valuation analyses performed in support of their opinions.  Defendants concede the materiality of this information by including the fairness opinions and valuation analyses among the "material" factors considered in recommending the Proposed Merger. Proxy at 44 and 46. However, the summary of Morgan Stanley's and Jefferies' fairness opinions and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, QTS shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to QTS's shareholders.

31.     In summarizing Morgan Stanley's *Comparable Public Companies Analysis*, the

Proxy fails to disclose the individual multiples and metrics for the companies observed in the analysis.

32. The summary of Morgan Stanley's *Dividend Discount Analysis* is materially misleading because it fails to disclose: (i) the implied terminal value of QTS as of December 31, 2024, (ii) the inputs and assumptions underlying the range of multiples of 19.0x to 25.0x, and (iii) the basis for applying a discount rate of 5.5% to 7.5%, and (iv) QTS's cost of equity.

33. In summarizing Morgan Stanley's *Premiums Paid Analysis*, the Proxy does not disclose: (i) the closing share price on the last trading day prior to the announced of the precedent transaction and for the ten trading days ending five days prior to the announcement of the transaction, (ii) the premia of the precedent transactions observed, and (iii) the volume weighted average stock price for each of the precedent transactions.

34. The summary of Morgan Stanley's *Multiples Paid Analysis* omits to disclose: (i) the implied fully-diluted enterprise value of the target companies, (ii) analyst estimates for the next twelve months EBITDA of the target companies, (iii) net debt and Series A preferred stock balances, (iv) the number of fully-diluted shares of QTS, and (v) how many other selected public company transactions were reviewed for the *Multiples Paid Analysis*, and why InterXion Holding N.V. and DuPont Fabros Technology, Inc. were selected when they share the same acquiror.

35. The summary of Morgan Stanley's *Research Analysts Price Targets and NAV Targets* analysis fails to disclose: (i) which equity research analysts were considered, (ii) the future public market trading price targets for QTS, (iii) the dates of publishing of the price targets, and (iii) analyst estimates of NAV per share of Class A common stock and the corresponding equity research analysts.

36. In summarizing Morgan Stanley's *Forward Stock Price* analysis, the Proxy is

materially misleading because it does not disclose: (i) the inputs and assumptions underlying the range of AFFO multiples of 18.4x to 24.5x and (ii) the basis for utilizing a discount rate of 6.5%.

37. In summarizing Jefferies' *Selected Public Companies Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed in the analysis.

38. The summary of Jefferies' *Selected Precedent Transactions Analysis* in the Proxy does not disclose the individual multiples and metrics for the transactions observed nor does it disclose the bases for Jefferies' selected EBITDA multiples range of 20.0x to 24.0x.

39. The summary of Jefferies' *Discounted Cash Flow Analysis* for QTS is also deficient. The Proxy fails to disclose: (i) the implied terminal value of QTS, (ii) inputs and assumptions underlying the range of multiples of 21.0x to 25.0x, (iii) the bases for the discount rate of 5.6% to 7.6%, and (iv) QTS's weighted cost of capital.

40. In summarizing Jefferies' *Dividend Discount Model Analysis*, the Proxy is materially misleading because it omits to disclose: (i) the implied terminal value of QTS, (ii) inputs and assumptions underlying the range of multiples of 21.0x to 25.0x, (iii) the bases for applying a discount rate of 6.7% to 8.7%, and (iv) QTS's cost of equity.

41. The Proxy's summary of certain additional information noted by Jefferies related to stock price targets and implied premiums paid in selected mergers and acquisition transactions is also inadequate and materially misleading. With respect to the price targets, the Proxy does not disclose: (i) the future public market trading price targets for QTS, (ii) the equity research analysts observed, and (iii) the dates of publishing the price targets. Similarly, with respect to the implied premiums paid, the Proxy does not disclose: (i) the implied premiums for the transactions observed, (ii) the closing share price on the last trading day prior to the announcement for each acquired company, and (iii) the premia of the transactions observed.

42. These material omissions render the summary of Morgan Stanley's and Jefferies' valuation analyses included in the Proxy misleadingly incomplete.

43. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

48. Defendants have issued the Proxy with the intention of soliciting QTS's common

shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for QTS, and (ii) Morgan Stanley's and Jefferies' valuation analyses performed in support of their fairness opinions.

49. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to QTS's shareholders, though they could have done so without extraordinary effort.

50. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that Morgan Stanley and Jefferies reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Morgan Stanley and Jefferies, as well as their fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy,

rendering the sections of the Proxy identified above to be misleadingly incomplete. Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question Morgan Stanley and Jefferies as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as QTS's officers and directors.

52. QTS is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

53. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of QTS's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of QTS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of QTS, and participation in and/or awareness of QTS's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of QTS, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of QTS, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Merger.

58. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 26, 2021                          **MONTEVERDE & ASSOCIATES PC**

                                              */s/ Juan E. Monteverde*
                                              Juan E. Monteverde (JM-8169)
                                              The Empire State Building
                                              350 Fifth Avenue, Suite 4405
                                              New York, NY 10118
                                              Tel: (212) 971-1341
                                              Fax: (212) 202-7880
                                              Email: jmonteverde@monteverdelaw.com

                                              *Attorneys for Plaintiff*